Robert Leroy **BALDWIN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 59052.

Court of Criminal Appeals of Texas, Panel No. 3.

Sept. 17, 1980.

Rehearing Denied Nov. 12, 1980.

Edgar A. Mason, Dallas, for appellant.

Henry Wade, Dist. Atty., William M. Lamb, and Donald E. Pervis, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, TOM G. DAVIS and CLINTON, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for unlawfully carrying a weapon. V.T.C.A. Penal Code, Sec. 46.02. After finding appellant guilty, the jury assessed punishment at six months and a $300.00 fine.

In his first ground of error, appellant contends that the trial court erred in overruling his motion to suppress and trial objection to the admission of the weapon, a club, into evidence. He maintains that the club was recovered as a result of an unlawful search and seizure.

Officer John Aldridge, of the Garland Police Department, testified that he was on routine patrol at 6:45 a. m. on December 17, 1976. After receiving a "suspicious persons" call from the dispatcher, Aldridge proceeded to a Mr. M food store.[1] Aldridge found appellant and a companion sitting in a car parked directly in front of the store. The officer parked his car behind the one in which appellant was sitting and asked him what he was doing. Appellant told Aldridge that he worked at the store and was waiting for it to open. In response to further questioning, appellant informed Aldridge that he had previously been arrested for carrying a pistol.

Appellant produced a driver's license but was unable to show any identification that he worked at the store. Aldridge ordered appellant and his companion to get out of the car and step to the rear. Aldridge then proceeded to perform a weapons frisk upon the pair. No weapons were recovered as a result of the pat down. With appellant and his companion still secure at the rear of the car, Aldridge proceeded to search under the driver's seat of appellant's car. With the aid of his flashlight, Aldridge found two sets of sticks joined by a chain under the front seat on the driver's side of the car. Aldridge stated that the sticks are commonly referred to as "nun–chucks" and used in karate. Appellant and his companion were then arrested by Aldridge for unlawfully carrying a weapon.

Aldridge stated that at the time he initially approached appellant, he thought that an offense was about to be committed. He further stated that other officers had told him that the store was in a high crime area and had been burglarized in the past. Lastly, he related that the store was supposed to open at 7:00 a. m.

In *Shaffer v. State*, 562 S.W.2d 853, we summarized the applicable law as stated in *Armstrong v. State*, 550 S.W.2d 25, in the following manner:

1. At both the hearing on the motion to suppress and during the trial, in response to questions as to whether he "later" determined who made the suspicious persons call, Aldridge answered in the affirmative stating that it was the person who was about to open the store.

"A police officer may briefly stop a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information. An occupant of an automobile is just as subject to a brief detention as is a pedestrian. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Circumstances short of probable cause for an arrest may justify temporary detention for the purpose of investigation since an investigation is considered to be a lesser intrusion upon the personal security of the individual. *Leighton v. State*, 544 S.W.2d 394 (Tex.Cr.App. 1976). The totality of the circumstances surrounding the incident are looked to in determining whether the police conduct may be reasonable. *State v. Hocker*, 113 Ariz. 450, 556 P.2d 784 (1976). In order to justify the intrusion, the law enforcement officer must have specific, articulable facts, which, in light of his experience and personal knowledge, together with other inferences from those facts, would reasonably warrant the intrusion of the freedom of the citizen detained for further investigation. *U.S. v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Thus, even in the absence of bad faith, detention based 'on a mere hunch' is illegal. There must be a reasonable suspicion by the officer that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with unusual activity and some indication that the activity is related to crime. Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful. *Irwin v. Superior Court of Los Angeles County*, 1 Cal.3d 423, 82 Cal.Rptr. 484, 462 P.2d 12 (1969)."

In *Leighton v. State*, Tex.Cr.App., 544 S.W.2d 394, the initial stop of the defendant's car and subsequent seizure of marihuana was challenged. The evidence showed that the defendant did not commit a traffic violation or an offense in the officer's presence. The officer stopped the defendant to investigate a suspected burglary although he did not have any affirmative facts that a burglary or an offense had been committed. We concluded that the initial stop was improper in that it was not based upon specific and articulable facts. *Leighton v. State*, supra at 397.

Likewise, in *Hinson v. State*, 547 S.W.2d 277, we found that the initial stop of the truck the defendant was driving was based upon nothing more than a mere suspicion. In that case, authorities had been informed that the defendant was "suspicious acting" when he rented a truck. Authorities then proceeded to a local airport and stopped the truck to see who was riding in it. No traffic violation or offense was shown to have been committed in the officer's presence.

Finally, in *Fatemi v. State*, 558 S.W.2d 463, the initial stop of a car was found to be improper. At the time of the stop, the officer knew the following: appellant's car had been parked with the parking lights on, partially off the side of the road adjacent to a park and across the street from houses and apartments; after the officer circled the block, the car had been moved; the car was seen a few moments later in the same general vicinity. In finding the stop improper, it was noted that there was nothing in the record to indicate that the defendant had committed a traffic violation, that the area in question was a high crime area, or that there was anything unusual about the car's description. *Fatemi v. State*, supra at 466.

In the instant case, there is no evidence that appellant committed a traffic violation or an offense in the officer's presence. Although the officer received a "suspicious persons" call from the dispatcher, no circumstances were given the officer which would give rise to more than a "mere hunch" that appellant's activity was related to crime.

Based upon this record, we conclude that Officer Aldridge was acting only on suspi-

cion when he detained appellant. There were no specific articulable facts shown which would have justified the initial detention of appellant. As this detention was improper, the club recovered as a result of the ensuing search was inadmissible.[2] *Wong Sun v. U. S.*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Shaffer v. State*, supra.

The judgment is reversed and the cause remanded.

---

**2.** Had our conclusion been that the detention was legal, no facts were learned in the investigation which followed to give rise to probable cause to search the vehicle. Further, there is an absence of testimony or circumstances which would show that the officer was in fear of safety or that the search was for the officer's protection. The record reflects that appellant and his companion were positioned at the rear of the vehicle when the search took place. See *Branch v. State*, 591 S.W.2d 460; *Beck v. State*, 547 S.W.2d 460.