DARNELL P. BATISTE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-063-CR 

NO. 2-02-064-CR 

DARNELL P. BATISTE APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)
------------

The trial court found appellant Darnell P. Batiste guilty of aggravated robbery with a deadly weapon and robbery by threats and sentenced him to twenty-five and twenty years’ imprisonment, respectively, with the sentences to run concurrently.  In one point on appeal, appellant contends that in denying his motion to suppress the trial court “improperly applied the ‘inevitable discovery’ doctrine to allow illegally seized evidence to be used against [him].”  We affirm.  

On August 13
, 2001, Arlington Police Officer Greg Wilkinson, while on burglary detail in an area known for previous burglaries, observed appellant walk into a “Game Stop” store, walk around the inside, and then come back out, all in a short amount of time.  “Game Stop” is a chain store, and another Game Stop store had been robbed on 
August 8.  Officer Wilkinson then saw appellant walk back to the car his girlfriend, Shayla Pierce, was sitting in, take off his shirt, and put it in the trunk.  Appellant was wearing another shirt underneath, and Officer Wilkinson noticed that appellant was also wearing two pairs of pants.

After observing this behavior, Officer Wilkinson dispatched Officer Nathaniel Harder to the scene.  When Officer Harder pulled up, he saw appellant look at the patrol car and walk quickly back into the store.  After Officer Harder drove away from the premises, appellant came back out of the store and got into Pierce’s car, and the car drove away.

Officer Wilkinson followed Pierce and appellant to an apartment complex nearby, where they entered the parking area and backed into a parking space. While following the car, Officer Wilkinson noticed that appellant continually turned his head to look back and that he repeatedly moved his hands on either side of him.  Once the car stopped in the apartment complex, Officer Wilkinson went to the driver’s side of the car and noticed a pair of latex, surgical-type gloves on the floor.  He also saw appellant moving his hand furtively throughout the car.

Officer Wilkinson asked Pierce for some identification, and she complied.  During this time, appellant continued making nervous gestures with his hands as if trying to reach for something under or between the seats.  Officer Wilkinson asked appellant to keep his hands where he could see them and asked for his identification, which appellant offered to get out of the trunk. Officer Wilkinson then went to the passenger side to talk to appellant.  Once Officer Wilkinson reached the passenger side of the car, he noticed that the latex gloves had disappeared and that appellant continued to move his hands about the car, not keeping them in plain sight as requested.  Fearing for his safety and suspicious of the movements, Officer Wilkinson then drew his pistol, pointed it at appellant, and asked him to put his hands on the dashboard.

After Officer Harder arrived at the scene, Officer Wilkinson asked appellant to open the car door.  Appellant complied with the request, and when he opened the door, a handgun fell out of the car and onto the ground.  Officer Wilkinson initially arrested appellant for unlawful carrying of a weapon and later also arrested him on an outstanding warrant.  

Pierce, the owner of the car, signed a consent to search form, which gave the police permission to inventory the car’s contents.  In the trunk, the police found a homemade mask, duct tape, latex gloves, and a knife.  The objects found in the trunk were similar to the objects used in a previous Game Stop robbery.

At the jail, Detective LeNoir questioned appellant about the robbery.  Before questioning, LeNoir read appellant his 
Miranda
 rights, and appellant orally confessed to the robbery and supplied a DNA sample.  DNA testing of blood collected from the robbery and appellant’s saliva later confirmed that appellant was the robber.  Appellant also dictated a five-page written confession that he read, made changes to, and signed.  The confession form had 
Miranda
 warnings written on it, which LeNoir read to appellant and appellant read for himself and admitted that he understood.

Appellant filed a motion to suppress, challenging the legality of his arrest and requesting that all evidence obtained after the arrest be suppressed.  After a hearing the trial court denied the motion.  In its findings of fact and conclusions of law, the court concluded that:

When [Officer Wilkinson] asked [appellant] his name and for his identification, it’s inevitable, even if the gun didn’t fall out, that the identification of [appellant] is going to be cause to arrest him due to his outstanding warrant.  When [appellant] was asked to step out of the car, which the officer was reasonable in asking for, and the gun fell out, it then becomes inevitable that [appellant] is going to be place[d] under arrest.  So there is no Fourth Amendment violation.  

A
ppellant contends that the trial court improperly applied the “inevitable discovery doctrine” when it concluded that the “evidence would be
 inevita
bly discovered when Appellant was arrested on the outstanding warrant” because there is no showing that appellant was arrested on the warrant and because the warrant was not supported by an affidavit establishing probable cause.  Appellant does not challenge Officer Wilkinson’s initial questioning of him, nor does he challenge Officer Wilkinson’s request for him to get out of the car. Finally, appellant does not challenge the findings of fact or the other conclusion reached by the trial court in denying the motion to suppress that when “the gun fell out, it then becomes inevitable that [appellant] is going to be place[d] under arrest.”

When reviewing a trial court’s decision to admit or exclude evidence, an appellate court must afford a trial court great discretion.  
Montgomery v. State
, 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1990).  Thus, we review a trial court’s ruling on the admissibility of evidence under an abuse of discretion standard.  
Angleton v. State
, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998).  The trial court’s ruling will be upheld as long as it stays within the “zone of reasonable disagreement.”
 
 
Weatherred v. State
, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  If the trial court's decision is correct on any theory of law applicable to the case, it will be sustained.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).  This principle holds true even when the trial court gives the wrong reason for its decision, especially with regard to the admission of evidence.  
Id.
 at 543-44.

Because appellant does not challenge the trial court’s conclusion that Officer Wilkinson was reasonable in asking him to step out of the car, we will not address whether that request was constitutionally permissible.  After asking appellant to step out of the car, however, Officer Wilkinson obtained probable cause to arrest him for unlawfully carrying a weapon when the gun fell out of the car.
(footnote: 2)  
See
 
Tex. Penal Code Ann.
 § 46.02 (Vernon 2003) (setting forth elements of unlawful carrying of weapon);
 Starlling v. State, 
743 S.W.2d 767, 771 (Tex. App.—Fort Worth 1988, pet. ref’d) (holding warrantless arrest valid where police had probable cause to believe defendant was unlawfully in possession of weapon).  Thus, even if the trial court incorrectly concluded that appellant’s arrest was inevitable upon Officer Wilkinson identifying him, it is not necessary for us to rule on that issue because the trial court’s order is correct under another theory.  
Romero
, 800 S.W.2d at 543.  As a result the trial court did not err in denying the motion to suppress based on the challenge to the lawfulness of the arrest.  We overrule appellant’s sole point.

We affirm the trial court’s judgment.

SAM J. DAY

JUSTICE

PANEL A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED:  June 26, 2003

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Appellant testified at the motion to suppress hearing that he did not have a license to carry the gun.